IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DROR IRONI, DENNIS IRONI, AND DAN IRONI,<br><br>   Plaintiffs,<br><br>  v.<br><br>EFI GLOBAL, INC. and CL ACQUISITION HOLDINGS LIMITED,<br><br>   Defendants. | Case No. 1:18-cv-07989<br><br>Honorable Edmond E. Chang |

## **DEFENDANTS EFI GLOBAL, INC. AND CL ACQUISITION HOLDINGS LIMITED'S ANSWER TO PLAINTIFFS' COMPLAINT**

Now Come Defendants, EFI GLOBAL, INC. and CL ACQUISITION HOLDINGS LIMITED, and for their Answer to Plaintiffs' Complaint, state as follows:

1. This lawsuit, which by contractual agreement is subject to Delaware Law and brought in this Court, seeks rescission of a contract under which Defendants purchased plaintiffs' business, pursuant to claims of: breach of contract, equitable fraud and unjust enrichment.

**ANSWER:** Defendant denies that this matter is entirely governed by Delaware law, as the parties signed two relevant agreements, one invoking Delaware law and one invoking New York law. The paragraph otherwise only recites the labels assigned by Plaintiff to its causes of action, which requires no answer, although Defendants deny that Plaintiffs are entitled to any relief and reserve all rights with respect to applicable law.

2. Plaintiffs, brothers who immigrated from Israel as children, devoted nearly 15

1

years developing and building an environmental consulting business operated by their family.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

3. In March 2015, Defendants persuaded Plaintiffs to sell their environmental consulting business to EFI and CL Holdings for $7 million, comprised of $4.2 million in cash and $2.8 million in the preferred stock of CL Holdings.

**ANSWER:** Defendants deny the allegations of this paragraph.

4. CL Holdings represented that its preferred stock was valued at $100 per share and, accordingly, issued 28,000 shares to Plaintiffs.

**ANSWER:** Defendants deny the allegations of this paragraph, and further answering state that the written documents signed by Plaintiffs list the only representations made and deny that any other representations had been made or relied upon.

5. Subsequently, CL Holdings was acquired by a third-party that valued the preferred stock at only $26 per share, despite the fact that the earnings and assets of CL Holdings were substantially greater at the time of the acquisition by the third-party than at the time of Defendants' acquisition of Plaintiffs' environmental consulting business.

**ANSWER:** Defendants deny the allegations of paragraph 5 that CL Holdings was acquired by a third party.

6. The facts demonstrate that Defendants' representations to Plaintiffs regarding the then value of CL Holdings preferred stock was wrong and the stock was worth nowhere near $100 per share.

2

**ANSWER:** Defendants deny the allegations of this paragraph.

7. Under Delaware Law, all conditions for rescission are met; accordingly, pursuant to each of the three claims identified above, Plaintiffs seek rescission of the sale of their environmental consulting business to Defendants.

**ANSWER:** Defendants deny the allegations of this paragraph, which appear to be no more than legal conclusions.

8. Plaintiff, Dror, is an individual and, at all relevant times, has resided in California.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

9. Plaintiff, Dennis, is an individual and, at all relevant times, has resided in California.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

10. Plaintiff, Dan, is an individual and, at all relevant times, has resided in California.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

11. Defendant, CL Holdings, is a corporation organized, existing, and headquartered under the laws of the Cayman Islands.

**ANSWER:** Defendants admit the allegations of this paragraph.

12. Defendant, EFI, is a corporation organized and existing under the laws of

Delaware, headquartered in Texas, and is a wholly owned subsidiary of Defendants CL Holdings. At all relevant times, EFI has, and continues to, maintain an office in Cook County.

**ANSWER:** Defendants admit that EFI is a Delaware corporation headquartered in Texas with an office in Cook County but deny that it is a wholly owned subsidiary of CL Holdings.

13. Jurisdiction is proper as to Defendants by virtue of 735 ILCS 5/2-209(a)(7), (b)(1), and (c); the making or performance of any contract or promise substantially connected with this state.

**ANSWER:** Defendants have removed the matter to this federal court and admit that jurisdiction exists over all parties in this Court.

14. Venue is proper in this Court pursuant to 735 ILCS 5/2-101 in that Defendant, EFI, resides in Cook County, Illinois and the parties selected this forum.

**ANSWER:** Defendants have removed the matter to this federal court and admit that venue is proper in the Northern District of Illinois.

15. The parties entered into and executed an Agreement ("Andersen Purchase Contract") which provides:

> ANY PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE TRANSACTIONS MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE **COURTS OF THE STATE OF ILLINOIS IN EACH CASE LOCATED IN THE CITY OF CHICAGO,ILLINOIS**, AND EACH PARTY IRREVOCABLY SUBMITS TO **THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT**, ACTION OR PROCEEDING. SERVICE OF PROCESS, **SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL TO SUCH PARTY'S ADDRESS SET FORTH HEREIN SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT**, ACTION OR OTHER

4

PROCEEDING BROUGHT IN ANY SUCH COURT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY **WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDTNG IN SUCH COURTS** AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**ANSWER:** Defendants admit entering the document Plaintiff's Complaint refers to as the Andersen Purchase Contract.

16. In 2001, Plaintiffs founded AE Incorporated d/b/a Andersen Environmental ("Andersen") as a full service consulting firm that is comprised of leading environmental professionals dedicated to providing effective solutions for our clients' environmental needs.

**ANSWER:** Defendants admit only that Andersen was involved in the environmental consulting business when sold by Plaintiffs and are without knowledge sufficient to admit or deny other allegations of this paragraph and therefore deny them and demand strict proof thereof.

17. From the time that Plaintiffs founded Andersen until they sold Andersen to EFI in March 2015, Plaintiffs owned all 200 shares of Andersen.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

18. Andersen's corporate headquarters were located in Los Angeles, California, with offices throughout the United States.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

19. Andersen provided environmental-consulting services for individuals, corporations, Municipal, State, and Federal agencies.

**ANSWER:** Defendants admit the allegation of this paragraph.

20. On March 19, 2015, Plaintiffs executed a Purchase Agreement with Defendants (the "Andersen Purchase Contract," Exhibit A hereto) under which EFI and CL Holdings contracted to purchase 120 shares of Andersen and CL Holdings contracted to receive the remaining 80 shares.

**ANSWER:** Defendants admit they entered into the Andersen Purchase Contract and that EFI received 120 shares of Andersen and that CL Holdings received 80 shares of Andersen. Defendants answer further that the terms of that agreement speak for themselves and deny any characterization of the document.

21. The Andersen Purchase Contract states that the Contract is governed by the laws of the State of Delaware. (Contract § 10.10(a), Exhibit A.)

**ANSWER:** Defendants answer that the document referenced speaks for itself and deny any characterization of the document. Further answering Defendants state that the Andersen Purchase Contract included a choice of Delaware law, but also included a required Stock Subscription Agreement, which included a choice of New York law.

22. In exchange for Andersen, Plaintiffs were to receive $7 million comprised of $4.2 million in cash and $2.8 million in shares of preferred stock in CL Holdings.

**ANSWER:** Defendants deny the allegations of this paragraph.

23. At the closing or soon thereafter, Defendants paid Plaintiffs $4.2 million in cash and issued 28,000 preferred shares of CL Holdings to Plaintiffs.

**ANSWER:** Defendants admit the allegation of this paragraph.

24. Andersen's revenues in the three years prior to the sale totaled $18,680,000.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

25. Immediately prior to the sale, Defendants had represented to Plaintiffs that the preferred stock in CL Holdings has a market value of $100 per share.

**ANSWER:** Defendants deny the allegations of this paragraph and answer further that in the contract documents the parties include no such representation and mutually denied that any representations existed other than those expressly in the documents.

26. CL Holdings also represented to Plaintiffs immediately prior to the Andersen salethat CL Holdings shares would increase in value throughout the acquisitions cycle and afterward.

**ANSWER:** Defendants deny the allegations of this paragraph and answer further that in the contract documents the parties included no such representation and mutually denied that any representations existed other than those expressly in the documents.

27. Moreover, CL Holdings also represented to Plaintiffs that outside venture capital partners would invest $200 million into CL Holdings to grow its operations through acquisitions, thereby further increasing the value of its preferred stock.

**ANSWER:** Defendants deny the allegations of this paragraph and answer further that in the contract documents the parties included no such representation and mutually denied that any representations existed other than those expressly in the documents.

28. If Defendants' representations had been accurate, the 28,000 preferred shares in CL Holdings would have had a market value of $2.8 million, which, when combined with the $4.2 million cash paid to Plaintiffs would have equaled the $7 million purchase price for Andersen.

**ANSWER:** Defendants deny the allegations of this paragraph.

29. Prior to the Andersen acquisition, Plaintiffs reviewed the financial reports and documents which Defendants had provided to them to satisfy themselves that CL Holdings preferred stock was plausibly worth $100 per share.

**ANSWER:** Defendants admit only that Plaintiffs represented in their contract documents that they had reviewed all documents necessary to satisfy their questions regarding the stock, the business, and any representations.

30. However, the preferred stock, in fact, had a market value at the time of the Andersen sale that was significantly less than the represented market value of $100 per share.

**ANSWER:** Defendants deny the allegations of this paragraph.

31. On or about April 16, 2018, Sedgwick, Inc., a Delaware corporation (together with its affiliates, "Sedgwick") acquired CL Holdings.

**ANSWER:** Defendants deny the allegations of this paragraph.

32. In connection with the Sale, CL Holdings received aggregate cash proceeds of $170,024,641.

**ANSWER:** Defendants deny that CL Holdings received cash proceeds of $170,024,641 in connection with a sale to Sedgwick.

33. Under the terms of the Sedgwick acquisition, only 26% of Plaintiffs'

8

preferred shares in CL Holdings was redeemed at a value of $100 per share.

**ANSWER:** Defendants deny that Sedgwick acquired CLAH, and answer that the terms of the contracts governing the redemption of CLAH shares speak for themselves and deny any characterization thereof.

34. Plaintiffs' remaining 74% CL Holdings preferred stock was valued at $0.

**ANSWER:** Defendants deny that Sedgwick acquired CLAH, and answer that the terms of the contracts governing the redemption of CLAH shares speak for themselves and deny any characterization thereof.

35. Thus, Plaintiffs' 28,000 shares of CL Holdings preferred stock was redeemed at an average value of $26 per share -- far below the represented value of the stock at the time of the Andersen acquisition.

**ANSWER:** Defendants admit that Plaintiffs' CLAH shares were redeemed at an average value of $26 per share, and deny the remaining allegations of this paragraph.

36. Defendants earnings per share during the two year period prior to Sedgwick acquisition exceeded their earnings per share during the two year period prior to the Andersen acquisition by $74 per share.

**ANSWER:** Defendants deny the allegations of paragraph 36.

37. Under normal market conditions, Defendants' improved earnings per share subsequent to the Andersen acquisition should have resulted in an increase in the value of CL Holdings preferred stock.

**ANSWER:** Defendants deny the allegations of this paragraph.

9

38. Instead, at the time of the Sedgwick acquisition, these preferred shares were given a value of only $26 per share.

**ANSWER:** Defendants deny the allegations of this paragraph.

39. No market event or occurrence within CL Holdings or EFI can account for a three- fold decrease in the market value of CL Holdings preferred stock

**ANSWER:** Defendants deny the allegations of this paragraph.

40. The only plausible explanation is that CL Holdings had misrepresented the value of its preferred stock at the time of the Andersen acquisition and that, in reality, the stock was, at that time, not even worth $26 per share (as valued by Sedgwick), much less the represented value of $100 per share.

**ANSWER:** Defendants deny the allegations of this paragraph.

## COUNT I
## RESCISSION

41. The only plausible explanation is that CL Holdings had misrepresented the value of its preferred stock at the time of the Andersen acquisition and that, in reality, the stock was, at that time, not even worth $26 per share (as valued by Sedgwick), much less the represented value of $100 per share.

**ANSWER:** Defendants repeat their responses to paragraphs 1 - 40 as though set forth in full herein.

42. Defendants' payment to Plaintiffs of cash and stock valued at $7 million was a material element of the Andersen Purchase Agreement.

**ANSWER:** This paragraph states a legal conclusion to which no answer is required.

Answering further, Defendants state that the Andersen Purchase Agreement speaks for itself, and deny any characterizations thereof.

43. The value of the cash and stock that Defendants paid to Plaintiffs was only worth $7 million if the 28,000 preferred shares of CL Holdings transferred to Plaintiffs had a value of at least $100 per share.

**ANSWER:** Defendants deny the allegations of this paragraph.

44. The value of CH Holdings preferred stock at the time of the Andersen acquisition was less than $100.

**ANSWER:** Defendants deny the allegations of this paragraph.

45. Therefore, Defendants have breached a material element of the Andersen Purchase Agreement.

**ANSWER:** Defendants deny the allegations of this paragraph.

46. Plaintiffs have performed all requirement actions under the Andersen Purchase Agreement.

**ANSWER:** Defendants are without knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny them and demand strict proof thereof.

47. Delaware Law permits the rescission of a contract where the contract was consummated as a result of mistake and the elements required for equitable relief are satisfied.

**ANSWER:** This paragraph states a legal conclusion to which no answer is required, and that conclusion is also a misstatement of law.

48. All parties to the Agreement were mistaken as to the value of shares in CL

11

Holdings preferred stock.

**ANSWER:** Defendants deny the allegations of this paragraph.

49. The mistake in valuation of CL Holdings preferred shares materially affects the agreed upon exchange of performances.

**ANSWER:** Defendants deny the allegations of this paragraph.

50. Plaintiffs took reasonable precautions in attempting to verify Defendants' misstatements as to the value of CL Holdings preferred stock.

**ANSWER:** Defendants deny the allegations of paragraph 50.

51. Plaintiffs did not assume the risk of the mistake in valuation.

**ANSWER:** Defendants deny the allegations of this paragraph.

52. Prior to the execution of the Andersen Purchase Agreement, Andersen was a privately held business with no publicly traded shares.

**ANSWER:** Defendants admit the allegation of this paragraph.

53. Consequently, Plaintiffs' ownership interest in Andersen is unique and cannot be readily valued.

**ANSWER:** Defendants deny the allegations of this paragraph.

54. Moreover, the Andersen Purchase Agreement provides:

The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**ANSWER:** Defendants answer that the document referenced speaks for itself and deny

12

any characterization of the document.

55. Plaintiffs were abruptly terminated from their employment with EFI without cause on June 15, 2018.

**ANSWER:** Defendants deny the allegations of this paragraph.

56. Little has changed since Plaintiffs left Andersen: nearly 95% of the employees remain and there has been no significant change in clientele or service lines.

**ANSWER:** Defendants deny the allegations of this paragraph.

57. Were the contract rescinded, Plaintiffs can readily assume control of Andersen and to return both the $4.22 million and 28,000 shares of CL Holdings preferred stock received as consideration for the acquisition of Andersen.

**ANSWER:** Defendants deny the allegations of this paragraph.

58. Plaintiffs did not waive any of their claims under the Anderson Purchase Agreement, which provides:

> No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, my right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege

**ANSWER:** The paragraph accurately quotes the contract but states a legal conclusion to which no answer is required.

WHEREFORE, Defendants deny Plaintiffs are entitled to any relief as to Count I and pray the matter be dismissed at Plaintiffs' cost.

13

## COUNT II
### EQUITABLE FRAUD

59. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 57 of the Verified Complaint as Paragraph 58 of Count II of the Verified Complaint as though fully set forth herein.

**ANSWER:** Defendants repeat their responses to paragraphs 1 - 58 as though set forth in full herein.

60. Under Delaware Law, the elements of equitable fraud are identical to the elements of common law fraud, except that it is not necessary to prove that the person committed the fraud acted knowingly or recklessly.

**ANSWER:** This paragraph states a legal conclusion to which no answer is required.

61. CL Holdings falsely represented the value of its preferred shares at the time of the Andersen Purchase Contract as $100 per share.

**ANSWER:** Defendants deny the allegations of this paragraph.

62. In fact, the value of CL Holdings preferred stock was significantly lower than $100 per share at the time of CL Holdings' representation.

**ANSWER:** Defendants deny the allegations of this paragraph.

63. CL Holdings' representation was intended to, and did, induce Plaintiffs to sell Andersen to Defendants.

**ANSWER:** Defendants deny the allegations of this paragraph.

64. Plaintiffs performed reasonable due diligence with respect to CL Holdings' representation and were justified in relying on the $100 share price representation.

**ANSWER:** Defendants deny the allegations in paragraph 64.

65. But for CL Holdings' representation, Plaintiffs would not have sold Andersen to Defendants.

**ANSWER:** Defendants deny the allegations of this paragraph.

WHEREFORE, Defendants deny Plaintiffs are entitled to any relief as to Count II and pray the matter be dismissed at Plaintiffs' cost.

## COUNT III
### UNJUST ENRICHMENT

66. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 39 of the Verified Complaint as Paragraph 65 of Count III of the Verified Complaint as though fully set forth herein.

**ANSWER:** Defendants repeat their responses to paragraphs 1 - 65 as though set forth in full herein.

67. Because CL Holdings preferred stock was worth less than $100 per share, CL Holdings acquired Andersen from Plaintiffs for less consideration than agreed upon.

**ANSWER:** Defendants deny the allegations of this paragraph.

68. It would be against fundamental principles of equity, fairness, and justice to allow CL Holdings to maintain its ownership interest in CL Holdings under such conditions.

**ANSWER:** Defendants deny the allegations of this paragraph.

WHEREFORE, Defendants deny Plaintiffs are entitled to any relief as to Count III and pray the matter be dismissed at Plaintiffs' cost.

## **AFFIRMATIVE DEFENSES**

1. Plaintiffs' claims for equitable relief are barred and any claim for monetary relief is limited by the express terms of the limitation of remedies provisions of the Andersen Purchase Contract.

2. Plaintiffs' claims are barred by the equitable doctrines of waiver, laches and unclean hands.

3. Plaintiffs' claims are barred by their express assumption of risk as to any valuation of the preferred shares they accepted as part of the Andersen Purchase Contract.

Respectfully submitted,

**EFI GLOBAL, INC. and CL ACQUISITION HOLDINGS LIMITED.**
Defendants

By: /s/ Thomas A. Doyle
One of Their Attorneys

Thomas A. Doyle (#3127055)
Matthew G. Allison (#6228744)
Donna M. Williams (#6204757)
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
+1 312 861 8000
Thomas.Doyle@bakermckenzie.com
Matthew.Allison@bakermckenzie.com
Donna.Williams@bakermckenzie.com

Dated: December 11, 2018

16

## **CERTIFICATE OF SERVICE**

      I, Matthew G. Allison, one of the attorneys for EFI Global, Inc. and CL Acquisition Holdings Limited, hereby certify that I caused a copy of the foregoing Defendants' Answer to Plaintiffs' Complaint to be served by ECF Notification and e-mail on counsel for Plaintiff:

>Alexander Loftus, Esq.
>Jeffrey Dorman, Esq.
>Ryan Moore, Esq.
>STOLTMANN LAW OFFICES
>233 S. LaSalle, 84th Floor
>Chicago, Illinois 60603
>p: 312.332.4200
>c: 312.772.5396
>alex@stoltlaw.com
>Firm No: 43671

December 11, 2018

>/s/ Matthew G. Allison
>Attorney for Defendants